IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Jane Roe, | ) | CASE NO. 6:18-cv-01327-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **AMENDED COMPLAINT** |
| vs. | ) | **(Jury Trial Requested)** |
| | ) | |
| Furman University, Beta Theta Pi, the Zeta | ) | |
| Lambda Chapter of Beta Theta Pi, and John | ) | |
| Doe, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW, the plaintiff, alleging and complaining of the defendants as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Jane Roe is a citizen and resident of Florida.

2. Furman University is an undergraduate and graduate university located in Greenville County, South Carolina.

3. Upon information and belief, John Doe is a citizen and resident of Virginia.

4. Upon information and belief, Beta Theta Pi is a national social fraternity with chapters located across the country.

5. Beta Theta Pi has a chapter located at Furman University under the name Zeta Lambda.

6. The events giving rise to this action transpired in Greenville County, South Carolina.

7. Jurisdiction and venue are proper for the foregoing reasons.

## FACTUAL BACKGROUND

8. The plaintiff incorporates the foregoing paragraphs as if repeated here, verbatim.

1

9.  The plaintiff was a student enrolled at Furman University from August 2014 until her graduation in May 2018.

10. Upon information and belief, defendant John Doe was a student enrolled at Furman from August 2016 until December 2017.

11. Upon information and belief, defendant John Doe was extended a bid to join the Zeta Lambda Chapter of Beta Theta Pi in January 2017 and officially joined that chapter in March 2017.

12. Upon information and belief, the Zeta Lambda chapter of Beta Theta Pi leases a house located at or near 2 Zelma Drive, Greenville, South Carolina, 29613.

13. On or about April 22, 2017, the plaintiff attended a party hosted by Beta Theta Pi at the house located at or near 2 Zelma Drive. Upon information and belief, the party was hosted by members of the Zeta Lambda chapter of Beta and was attended by both members of the fraternity and other Furman students.

14. Upon information and belief, the Zeta Lambda chapter of Beta Theta Pi served alcohol to guests of the party, including underage students. Upon further information and belief, the fraternity knew or should have known that underage students were illegally consuming alcohol at the party.

15. Upon information and belief, John Doe, who was underage, began drinking prior upon his arrival at the party and continued to consume alcoholic beverages during his time at the party. Upon further information and belief, John Doe became heavily intoxicated at the party and remained so at relevant times, including when he forcefully engaged in sexual intercourse with the plaintiff without her consent. Upon information and belief, John Doe's intoxication was obvious, and representatives for the defendants should have known he was

2

heavily intoxicated before they allowed him to continually consume alcohol.

16. While at the party, the plaintiff socialized with several friends and acquaintances, including speaking with John Doe.

17. While the plaintiff and John Doe were speaking at the party, John Doe informed the plaintiff that he could not return to his dormitory room that night because his roommate had invited a female friend to the room and wanted privacy. John Doe told the plaintiff that, as a result, he did not have a place to stay for the night.

18. The plaintiff offered to let John Doe sleep on the couch in her on-campus apartment, which she shared with three female roommates. John Doe accepted the plaintiff's offer.

19. At approximately 2:45 a.m. on April 23, 2017, the plaintiff and John Doe left the house located at 2 Zelma Drive and took an Uber to the plaintiff's apartment. The plaintiff and John Doe did not stop anywhere along the way and traveled directly from the party to the plaintiff's apartment.

20. After arriving at the plaintiff's apartment, the plaintiff showed John Doe to the living room couch, said goodnight, and went into her bedroom. John Doe followed the plaintiff into her bedroom and began to make sexual advances toward the plaintiff.

21. The plaintiff said "no" and asked John Doe to stop but John Doe, who was heavily intoxicated, negligently and recklessly ignored the plaintiff's verbal and physical signs of refusal and forcefully engaged in sexual intercourse with the plaintiff without her consent. The plaintiff has testified that it was as if her pleas and protests were not registering with John Doe at the time of the events described herein. John Doe had been observed by others prior to these events when he became so intoxicated he did not remember his actions, which is consistent with the plaintiff's description.

22. After John Doe engaged in sexual intercourse with the plaintiff, John Doe passed out in the plaintiff's bed. When he awoke several hours later, he hurriedly dressed and left the plaintiff's apartment, leaving his underwear in the plaintiff's bedroom.

23. After John Doe left the plaintiff's apartment, the plaintiff called her boyfriend and informed him of the events of the prior evening. Later that afternoon, the plaintiff also confided in her best friend. Both people encouraged the plaintiff to have a medical forensic exam performed and to confront John Doe about his sexual misconduct.

24. On the evening of April 23, 2017, the plaintiff and her best friend initiated a text message conversation with John Doe. During that conversation, John Doe initially claimed to not remember the events that occurred the previous evening. Then, after talking with his mother and for the first time ever, John Doe claimed he remembered the events clearly and that the sexual encounter had been consensual.

25. After exchanging the above-referenced text messages with the plaintiff, John Doe met with the president of the Zeta Lambda chapter of Beta and told him that the plaintiff had accused John Doe of sexual misconduct. Upon information and belief, he also told the president that he did not remember the events of the previous evening because he had been drinking heavily.

26. Upon information and belief, after speaking with John Doe and learning of the plaintiff's accusations, the president of the Zeta Lambda chapter of Beta did not take any steps to investigate the plaintiff's claims or to initiate any type of chapter disciplinary proceeding against John Doe.

27. On April 24, 2017, the plaintiff followed the advice of her boyfriend and best friend and went to Greenville Memorial Hospital to have a medical forensic exam performed. This thorough

4

and invasive procedure took approximately three hours to complete. The plaintiff chose to keep the results of the exam anonymous rather than reporting the incident at the time.

28. Several weeks after the above-described incident, the plaintiff moved to Colorado for the summer. During the summer, she experienced extreme emotional distress from the incident, including severe anxiety, loss of appetite, insomnia, and terrifying thoughts and memories. These symptoms intensified when the plaintiff returned to Greenville in the fall of 2017.

29. When the plaintiff returned to Greenville in the fall of 2017, she began to see a therapist and a psychiatrist, the latter of whom diagnosed the plaintiff with Post Traumatic Stress Disorder.

30. When Furman's fall semester began, the plaintiff attempted to reconnect with her close friends following the summer break. The plaintiff was surprised when several of her close friends treated the plaintiff quite differently from how they previously had and either ignored her entirely or avoided her whenever possible.

31. Confused by her friends' behavior, the plaintiff reached out to her best friend, who had graduated from Furman in May. The plaintiff's friend informed the plaintiff that the president of the Zeta Lambda chapter of Beta relayed John Doe's version of events to other members of the fraternity, including several of the plaintiff's close friends.

32. In September 2017, rumors of the sexual encounter between Doe and Roe began to circulate among members of the Zeta Lambda chapter of Beta. In response to these rumors, several members of the Zeta Lambda chapter expressed dissatisfaction with the fraternity's president and the president's failure to conduct an investigation into the plaintiff's allegations.

33. After several members of the Zeta Lambda chapter disaffiliated from the fraternity, the president began to meet with fraternity members individually or in pairs. At each meeting, the president informed the fraternity members that the plaintiff had accused John Doe of

5

sexual misconduct, but that John Doe maintained that the sexual contact was consensual. The president also discouraged fraternity members from disaffiliating by telling them that, if they stayed in the fraternity, he would consider going through a formal investigation and resolution process with respect to the plaintiff's allegations.

34. Throughout the fall of 2017, the plaintiff experienced social ostracism, harassment, and retaliation from several students, most of whom were angry with the plaintiff for accusing a member of the Zeta Lambda chapter of sexual misconduct. Examples of this social ostracism, harassment, and retaliation include the following:

   a.  a Furman student drove toward the plaintiff in his truck in a fast and reckless manner in an attempt to cause the plaintiff to fear that he was going to strike her with his vehicle;

   b.  Furman students followed the plaintiff to an off-campus bar, sat at the table immediately next to the plaintiff, and loudly discussed how the plaintiff had harmed the Zeta Lambda chapter of Beta by reporting John Doe's misconduct;

   c.  Furman students approached the plaintiff at a party and loudly discussed how the plaintiff had harmed the Zeta Lambda chapter of Beta by reporting John Doe's misconduct. One of the students then intentionally bumped into the plaintiff's friend in an aggressive manner. Because the plaintiff was standing next to her friend and because the student was loudly criticizing the plaintiff, this action physically intimidated the plaintiff;

   d.  a Furman student provided false and defamatory information to Furman investigators; and

   e.  such other acts as will be shown through discovery and at trial.

35. Members of the Zeta Lambda chapter of Beta knew or should have known of the social ostracism, harassment, and retaliation the plaintiff experienced. Rather than attempting to

prevent that ostracism, harassment, and retaliation, members, including the chapter's leadership, fostered an environment that allowed this conduct to continue. The president of the chapter not only knew of this conduct, but he personally participated in it. This ostracism, harassment, and retaliation exacerbated the plaintiff's mental anguish, emotional trauma, and psychological injuries, and caused the plaintiff extreme psychological distress.

36. On October 23, 2017, the plaintiff reported her non-consensual sexual encounter with John Doe to Furman University officials. Because Furman's Title IX Coordinator, Melissa Nichols, was out of the office, the plaintiff reported the sexual misconduct to Furman Deputy Title IX Coordinator Kristen Davis.

37. Following the plaintiff's report, Furman opened an investigation into the plaintiff's claims. This investigation and subsequent hearing were supposed to be conducted pursuant to Furman's 2016-2017 Sexual Misconduct Policy, which is supposed to be based on Title IX mandates.

38. On March 28, 2018, a Hearing Board conducted a hearing in the plaintiff's allegation of sexual misconduct against John Doe. During that proceeding, the Board heard statements from the plaintiff and John Doe and testimony from the plaintiff, John Doe, and several witnesses. At the conclusion of the hearing, the Board deliberated and found John Doe responsible for committing sexual assault and sexual harassment.

39. During Furman University's investigation into the plaintiff's claim, school officials and representatives involved in the process repeatedly violated the rules and procedures detailed in Furman University's Sexual Misconduct Policy and Title IX mandates. Examples of such violations include, but are not limited to, the following:

a. allowing the process from the initial report to the hearing to take over six months, rather

than 60 days;

b.  granting John Doe's counsel remote access to the investigators' report;

c.  redacting witness testimony establishing a pattern of prior sexual misconduct on the part of John Doe;

d.  providing John Doe with written copies of interview questions and giving John Doe the opportunity to review interview questions with legal counsel prior to answering those questions;

e.  giving a copy of the plaintiff's medical records directly to John Doe's counsel and allowing that counsel to further disseminate the plaintiff's medical records in order to obtain an expert witness without the plaintiff's knowledge or consent; and

f.  such other violations as will be shown through discovery and at trial.

40. All defendants herein named caused some of the plaintiff's injuries.

41. The entities related to this action ratified the actions of the individual employees involved.

42. All defendants violated policies and procedures, and those violations contributed to the plaintiff's injuries.

43. Some or all of the defendants' actions were motivated by unreasonable financial gain.

44. The defendants are liable for several different and distinct acts and omissions, including some of the defendants' negligent hiring.

45. The plaintiff is therefore informed and believes she is entitled to judgment against the defendants for actual and punitive damages.

**FOR A FIRST CAUSE OF ACTION**
**(Common Law Liability for Negligence, Gross Negligence, and Recklessness)**

46. The allegations contained in the preceding paragraphs, not inconsistent herewith, are hereby re-alleged as if set forth herein verbatim.

47. The defendants had a duty to exercise due care, defined to mean the care which a person of ordinary reason and prudence would exercise in the circumstances.

48. Governmental entities and employees had a duty to exercise the degree of knowledge, skill, and care that is required of police officers, guards, governmental employees, public officials, and municipalities and that is ordinarily possessed and exercised by those in their special line of work.

49. Breaches of duties constitute negligence and sometimes recklessness.

50. The defendants breached their duties in a negligent, reckless, and grossly negligent manner in some or all of, but not limited to, the following particulars:

    a.  by causing injury to the plaintiff though reckless and negligent acts;

    b.  by causing the plaintiff's damages to be worse and exacerbating an already bad and injurious situation;

    c.  with respect to John Doe, by becoming heavily intoxicated and, while intoxicated, forcefully engaging in sexual intercourse with the plaintiff without her consent;

    d.  by failing to ensure that Furman employees and others complied with all applicable policies, procedures, and Title IX mandates;

    e.  by implementing policies and procedures that are themselves unconstitutional or improper;

    f.  by disseminating the plaintiff's medical records without first obtaining her consent;

    g.  by creating an atmosphere conducive to under-age drinking, which resulted in the excessive intoxication of John Doe, who, in his intoxicated state, engaged in sexual intercourse with the plaintiff without the plaintiff's consent;

    h.  by supplying alcohol to underage students;

i.   by failing to exercise even slight care;

j.   by failing to provide reasonable protection and preventative measures;

k.   by failing to warn others of some or all of the defendants' dangerous tendencies;

l.   by failing to adequately investigate their employees' conduct prior to the commission of the tortious actions described herein;

m.  by authorizing, adopting, and ratifying the defendants' conduct toward the plaintiff;

n.   by hiring employees who were incompetent, lacked proper education and training, or were otherwise unfit;

o.   by harassing the plaintiff;

p.   by retaliating against the plaintiff;

q.   by allowing students to harass others unchecked;

r.   by allowing students to retaliate against others unchecked;

s.   by failing to investigate the plaintiff's complaints of harassment and retaliation;

t.   by granting John Doe special accommodations and exceptions to established procedures without offering the plaintiff similar accommodations and exceptions and, in some cases, without informing the plaintiff that John Doe was receiving special accommodations and exceptions;

u.   by failing to reprimand or otherwise discipline members of the Zeta Lambda chapter of Beta for underage drinking;

v.   by failing to notify advisors of Beta or the Zeta Lambda chapter of the plaintiff's complaint against John Doe;

w.  by promoting an atmosphere where the events described herein were likely to occur; and

x.   in other such particulars as the evidence may show.

10

51. As a direct and proximate result of the negligent, grossly negligent, and reckless acts and omissions of the defendants, the plaintiff sustained injuries and damages, including those set forth above.

52. The plaintiff is therefore informed and believes she is entitled to judgment against the defendants for actual and punitive damages.

### FOR A SECOND CAUSE OF ACTION
### (Negligent Hiring, Supervision, and Retention)

53. The allegations contained in the preceding paragraphs, not inconsistent herewith, are hereby re-alleged as if set forth herein verbatim.

54. Furman, Beta Theta Pi, the Zeta Lambda Chapter of Beta each had a duty to adequately hire persons/members fit for employment, to perform background checks, and to require appropriate education, experience, training, and other qualifications.

55. Furman, Beta Theta Pi, the Zeta Lambda Chapter of Beta each had a duty to adequately supervise competent and fit employees/members and to terminate unfit employees/members.

56. Furman, Beta Theta Pi, the Zeta Lambda Chapter of Beta each breached their duties to adequately supervise, hire, and retain employees/members and acted in a negligent and grossly negligent/reckless manner in some or all of the following particulars:

    a. in failing to ensure that employees/members, including Melissa Nichols, Stephanie Boyd, Bernie Stanton, and Meredith Green, complied with procedures regarding incidents such as those described herein and others;

    b. in failing to ensure that employees/members, including Melissa Nichols, Stephanie Boyd, Bernie Stanton, and Meredith Green, fairly granted the plaintiff and John Doe equal rights, accommodations, and opportunities during the investigation and hearing process;

    c. in failing to ensure that employees/members, including Melissa Nichols, Stephanie Boyd,

Bernie Stanton, and Meredith Green, properly responded to the plaintiff's reports of harassment, retaliation, and fear for her safety;

d.  in failing to provide proper training and education to employees/members;

e.  in failing to conduct routine check-ups and monitoring;

f.  in failing to ensure that employees/members complied with employment policies and procedures;

g.  in failing to adequately investigate the conduct of the employees/members toward the plaintiff;

h.  in failing to appropriately interview candidates or require that candidates be qualified before hiring them;

i.  in failing to require sufficient education and training of potential employees/members;

j.  in failing to properly screen applicants, perform appropriate background checks, check references, and perform sufficient and formal interviews of potential employees/members; and

k.  in other such particulars as the evidence may show.

57. As a direct and proximate result of the negligent and grossly negligent/reckless acts and omissions of the defendants, the plaintiff suffered injuries and damages, including those set forth above.

58. The plaintiff is therefore informed and believes she is entitled to judgment against the defendants for actual and punitive damages.

### FOR A THIRD CAUSE OF ACTION
**(Violation of the S.C. Constitution, the U.S. Constitution, & 42 U.S.C. § 1983)**

59. The allegations contained in the preceding paragraphs, not inconsistent herewith, are hereby re-alleged as if set forth herein verbatim.

60. Pursuant to the United States Constitution and the South Carolina Constitution, the plaintiff has certain rights and liberties, including the following:

   a.  a right to be secure in her person;

   b.  a right to be free from unwarranted advances and harassment;

   c.  a right to be free from unreasonable invasions of privacy;

   d.  a right to express free speech without retaliation; and

   e.  other civil rights and liberties.

61. Pursuant to U.S. CONST. amendment XIV, amendments are applicable to the conduct of state and municipal law enforcement personnel and employees.

62. Furman acted under the color of law by holding itself out through its Title IX office, coordinators, and policies and through its sexual misconduct policies as having governmental agency and/or authority. Specifically, Furman instructs students that have been harassed or discriminated against on the basis of their gender or who have been subjected to sexual misconduct to seek redress for constitutional violations and crimes by reporting the harassment, discrimination, and misconduct directly to Furman's Title IX Coordinator or Deputy Coordinators. Furman ensures students that its Title IX Coordinators ensure compliance with this federal law.

63. Furman, when acting under the color of law and described above, deprived the plaintiff of her constitutional rights and liberties, including rights guaranteed by one or more of the 1st, 4th, 5th, 8th, 14th, and other Amendments.

64. The defendants were deliberately indifferent to the plaintiff's rights and liberties in some or all of the following ways:

13

a. failing to investigate the plaintiff's complaints of harassment and retaliation committed by other Furman students against the plaintiff both before and during Furman's investigation into her complaint of sexual misconduct against John Doe;

b. deliberately granting John Doe's repeated requests for exceptions to Furman's policies while indifferently ignoring the plaintiff's right to similar exceptions and/or accommodations. These requests include the following:

   i. providing the plaintiff's medical records to John Doe's counsel without the plaintiff's consent and authorizing John Doe and his counsel to further disseminate those records with an unknown and unnamed potential expert witness;

   ii. allowing John Doe's counsel to remotely access the investigators' report, which was reportedly directly available only to the plaintiff and John Doe, while not informing the plaintiff of this exception or offering her support person a similar opportunity to remotely access the investigators' file;

   iii. allowing two attorneys for John Doe to be included in correspondence, to have access to the confidential and sensitive information of the investigation, and, effectively, to both serve simultaneously as "support persons" for John Doe while not informing the plaintiff of this exception or offering her a similar opportunity for co-support persons;

   iv. allowing witnesses who already had been interviewed and who could provide no new or additional information to testify at the hearing, including allowing John Doe's mother to appear before the board and to testify in person;

      v.    allowing John Doe to submit evidence less than a week before the hearing and after the investigators' report had been finalized even though the submitted evidence was available to John Doe well in advance of the date of submission; and

      vi.    in such other ways as will be shown through discovery and at trial.

   c.   forwarding an email from John Doe documenting the significance of his expert witness' testimony to the board members in advance of the hearing;

   d.   allowing a student who had already been interviewed to testify at the hearing over the plaintiff's expressed concerns for her safety and even though the witness had nothing new to add to her previous statement; and

   e.   in such other ways as will be shown through discovery and at trial.

65. Furman's actions constitute violations of the plaintiff's constitutional and civil rights.

66. As a result of Furman's deliberate indifference, the plaintiff experienced persistent and pervasive harassment, fear for her personal safety, unreasonable invasions of her privacy through the dissemination of the confidential and highly sensitive records of her medical forensic exam, an inability to truthfully discuss the events of her nonconsensual sexual encounter with John Doe without fear of further retaliation and harassment, and such other damages as will be shown through discovery and at trial.

67. As a direct and proximate result of defendants' conduct, the plaintiff was deprived of her rights, privileges, and immunities secured by the United States Constitution and the South Carolina Constitution.

68. No reasonable person or government employee could have believed that the defendants' actions comported with the United States Constitution and/or the South Carolina Constitution, in light of the clearly established legal rules for conduct.

15

69. The plaintiff is therefore informed and believes she is entitled to judgment against the defendants and reasonable attorney's fees, pursuant to 42 U.S.C. §§ 1983 and 1988.

### FOR A FOURTH CAUSE OF ACTION
**(Violation of Title IX, 20 U.S.C. § 1681)**

70. The allegations contained in the preceding paragraphs, not inconsistent herewith, are hereby re-alleged as if set forth herein verbatim.

71. Pursuant to Title IX, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." This mandate also protects a student from harassment from other students.

72. Because Furman University receives federal funding, it is subject to the requirements of Title IX. Furman has a Title IX Coordinator and several Title IX Deputy Coordinators to ensure that its policies and procedures, including the Sexual Misconduct Policy, comport with the requirements of Title IX.

73. Furman demonstrated deliberate indifference to the plaintiff's report of sexual misconduct and harassment in some or all of the following ways:

   a. failing to investigate the plaintiff's complaints of harassment and retaliation committed by other Furman students against the plaintiff both before and during Furman's investigation into her complaint of sexual misconduct against John Doe;

   b. deliberately granting John Doe's requests for exceptions to Furman's policies while indifferently ignoring the plaintiff's right to similar exceptions and/or accommodations. These requests include the following:

      i. providing the plaintiff's medical records to John Doe's counsel without the plaintiff's consent and authorizing John Doe and his counsel to further disseminate

16

those records with an unknown and unnamed potential expert witness;

ii.    allowing John Doe's counsel to remotely access the investigators' report, which was reportedly directly available to only the plaintiff and John Doe while not informing the plaintiff of this exception or offering her support person a similar opportunity to remotely access the investigators' file;

iii.    allowing two attorneys for John Doe to be included in correspondence, to have access to the confidential and sensitive information of the investigation, and, effectively, to both serve simultaneously as "support persons" for John Doe while not informing the plaintiff of this exception or offering her a similar opportunity for co-support persons;

iv.    allowing witnesses who had already been interviewed and who could provide no new or additional information to testify at the hearing, including allowing John Doe's mother to appear before the board and to testify in person;

v.    allowing John Doe to submit evidence less than a week before the hearing and after the investigators' report had been finalized even though the submitted evidence was available to John Doe well in advance of the date of submission, and

vi.    In such other ways as will be shown through discovery and at trial

c.    forwarding an email from John Doe documenting the significance of his expert witness' testimony to the board members in advance of the hearing;

d.    allowing a student who had already been interviewed to testify at the hearing over the plaintiff's expressed concerns for her safety and even though the witness had nothing new to add to her previous statement; and

e.    in such other ways as will be shown through discovery and at trial.

17

74. As a result of Furman's deliberate indifference, the plaintiff was made vulnerable to and experienced further harassment, including the following:

    a.  a Furman student drove toward the plaintiff in his truck in a fast and reckless manner in an attempt to cause the plaintiff to fear that he was going to strike the plaintiff with his vehicle;

    b.  Furman students followed the plaintiff to an off-campus bar, sat in the table immediately next to the plaintiff, and loudly discussed how the plaintiff had negatively impacted the Zeta Lambda chapter of Beta by reporting John Doe's misconduct;

    c.  Furman students approached the plaintiff at a party and loudly discussed how the plaintiff had negatively impacted the Zeta Lambda chapter of Beta by reporting John Doe's misconduct. One student then intentionally ran into the plaintiff's friend in an aggressive manner. Because the plaintiff was standing next to her friend, and because the student was loudly criticizing the plaintiff, this action physically intimidated the plaintiff;

    d.  a Furman student provided false and defamatory information to Furman investigators; and,

    e.  such other acts as will be shown through discovery and at trial.

75. As a direct result of Furman's deliberate indifference, the plaintiff suffered unwanted sexual contact and was damaged.

76. The plaintiff is therefore informed and believes she is entitled to judgment against the defendants for actual and punitive damages.

**FOR A FIFTH CAUSE OF ACTION**
**(Dram Shop Liability/Social Host Liability)**

77. The allegations contained in the preceding paragraphs, not inconsistent herewith, are hereby re-alleged as if set forth herein verbatim.

18

78. The Zeta Lambda Chapter of Beta and Beta owed duties to exercise reasonable care to not knowingly and intentionally serve alcoholic beverages to underage individuals and to not cause underage individuals to be served alcoholic beverages.

79. The Zeta Lambda Chapter of Beta and Beta breached their duties by knowingly and intentionally serving, or causing to be served, John Doe, who was underage at the time of the events described herein. The defendants knew that John Doe, who was a member of both organizations, was underage and could not legally consume alcoholic beverages.

80. The Zeta Lambda Chapter of Beta and Beta also knew that John Doe had engaged in a pattern of drinking in excess at fraternity functions and displaying reckless and potentially dangerous behavior. Examples of such behavior include, but are not limited to, becoming intoxicated at a fraternity tailgate and groping a Furman student, becoming so intoxicated at a fraternity formal that he urinated in the bed later that evening, frequently engaging in drinking games during fraternity events, and crushing empty beer cans against his forehead after consuming the alcohol in those cans at fraternity events.

81. An essential part of South Carolina dram shop and social host liability laws is to protect third parties from being injured by the actions of intoxicated persons illegally served. The plaintiff – a third party injured by the actions of John Doe, an intoxicated person illegally served alcohol – is part of the class of persons that South Carolina dram shop and social host liability laws are designed to protect.

82. As a direct and proximate cause of the defendants serving, or causing to be served, John Doe, the plaintiff was injured. After becoming intoxicated at a party hosted by the defendants, John Doe forcefully engaged in sexual intercourse with the plaintiff without the plaintiff's consent.

19

83. The plaintiff is therefore informed and believes she is entitled to judgment against the defendants.

WHEREFORE, the plaintiff requests a jury trial and judgment against the defendants for actual damages, all statutory damages, punitive damages, costs, and such other relief the Court deems just and equitable.

Respectfully submitted,

Hawkins & Jedziniak, LLC

*s/ Joshua T. Hawkins*
Joshua T. Hawkins, Federal Bar #11418
Helena L. Jedziniak, Federal Bar #12809
1225 South Church Street
Greenville, South Carolina 29605
(864) 275-8142 (telephone)
(864) 752-0911 (facsimile)
josh@hjllcsc.com
helena@hjllcsc.com

Butler, Means, Evins & Browne, P.A.

Stanley T. Case, Federal Bar #0071
234 North Church Street
Spartanburg, South Carolina 29306
(864) 582-5630
scase@butlermeans.com

Attorneys for Plaintiff

Greenville, South Carolina
December 11, 2018